And we will proceed to hear argument in the next case on the calendar for argument which is 24-4243 Ignite International Limited v. Zachariah James Gleason and Mirza Baig. And we will hear first from Mr. Dunn. Mr. Dunn, if you can wait until we have the group assembled here in the courtroom. the judgment that related to the failure to appear for the debtor's exam, the inability to collect because, you know, the defendants are engaging in whatever kind of improper conduct that you're alleging. Is all of that in the record? And can we consider it? Yes, I believe it is in the record. It's all part of the same case and matter. I mean, the whole issue is that they... But it happened after the fact. After the fact of the order by the court. Correct. That they entered a stipulated judgment as to the breach of contract for the LLC, not as for anything related to them individually. Right. So I think my question is, you know, we are deciding an appeal of the judgment of the district court. And there was, I take your point that there's been conduct that's occurred after that in terms of the stipulated judgment and your inability to collect. And there may be shenanigans on the part of the defendants. But how are we to consider that evidence or whatever it is if it's not part of the record below? Sure. And I would say that it is part of the record below because the court at the same hearing actually ruled in our favor on liability. So liability against the LLC was set before that the alter ego liability was thrown out. So by the time this ruling came through, we already had a ruling setting liability against the LLC. And so the two matters are still intertwined. It's in the record and it's at the same hearing in the same order. Did you depose the two members of the LLC here and ask them about these particular suspicious looking transactions? We did not in this matter. I mean, as far back as 1917, is there any in the summary judgment record? Is there any specific evidence about. Those particular transactions, the check to James Dean and Betty White, the very large withdrawals over time into crypto accounts. Any specific evidence or are you just saying just the mere fact of the transactions creates a pattern that raises an inference? Or do you have anything specific about the nature of any of those transactions in the record? Sure. As I was saying, there is no accounting records in this matter. They did all this sort of by papers, by notes. They claim that their landlord threw away their computers. They sold some of the computers. They have no records. Their accounting firm deleted all their records because they stopped paying their monthly membership. So the only things we have are the bank account records. And I thought you had W2 records. Where did you not have to be two records at W2 records? Yes. Are those just those two individuals? So they sent their W2s. Is there any evidence in the record about how the purported salaries reflected in the W2s were calculated? No. I mean, they filed their motion for summary judgment and they had inadmissible evidence. They provided no evidence about any of the why was the evidence inadmissible? Well, they had deficient self-serving unsworn declarations that under U.S.C. When someone submits a declaration and says I'm innocent, I didn't do it. That's self-serving, but it's usually admissible when they're in a position to have knowledge about the circumstances about which they're testifying. But they provide no supporting evidence for any of their statements. Well, that's different. I mean, it's it's it's not that it's not admissible because it's self-serving. It's that it's admissible, but a very little probative value and doesn't create a triable issue without something more. That's a different argument. But did you raise in the district court the specific objection that the under penalty of perjury, which referenced the state law formulation rather than the federal formulation? Did you say that that was a ground for not considering them? Or is that something you've raised for the first time on appeal that they didn't use the statutory language? That's what we raise on appeal, which we believe is a purely legal question, whether or not they know. But this is the kind of thing that if you raise that contemporaneously in the district court, it could have been fixed. And that's why we have contemporaneous objection rules, because if you say it on the spot, something technical like that can be fixed. They could resubmit it with the proper juror at. But now on appeal where you didn't raise it below. Why isn't that just forfeited? We don't believe it's a waiver because it's a purely legal issue. Whether or not they're allowed to use the discretion on appeal to decide. But you you, I think, concede that the that you did not raise this at the district court. So now you're relying on this court to exercise its discretion in addressing this issue, because I think in your view, this is a pure legal issue. Yes, exactly. We admit that we did not raise the statutory language issue inside of the district court. And the district court didn't really had a one page or one and a half page order in terms of the decision, but but spoke about it, about the reasoning. It decided not to pierce a corporate bill. Do you agree with that? Yes. But he cited no case law for his reasoning. He writes nothing that he bases his opinion on. He says that there's no evidence of fraud. He doesn't go into injustice. He doesn't go into an equity. And that was the point of my question. Does he discuss that anywhere else? And because I went through the transcript, because, again, there is no written order that thoroughly explains his reasoning. So I had to go back to the transcript and go page by page, the entire transcript of the hearing to determine if he made a ruling on this. He has one paragraph, but he discusses fraud. He doesn't discuss this argument that you're making now. Exactly. Your Honor, he does not. And that's sort of an issue in this matter is there's not a case law in Arizona on some of these topics. But he did not go into why he found that reason other than saying there's no evidence of fraud. And he stated that he believes based on him, Wayne, is the information that the transfers were simply observing formalities and a failure to. Your best evidence of fraud or or some sort of injustice that's occurred is the transaction. So the commingling of of corporate funds with personal use and the best evidence you have of that are the transactions, just the the transactions of the Venmo and the Zelle payments to Mom and James Dean. But but there's no deposition testimony and there are no bank records because, as you mentioned, those were destroyed. Well, there are bank records. There's no actual accounting records. I don't have any accounting showing why these payments remain, how they're paid. We don't know how they're where it's under understanding that that general account paid their W2s. So this is our understanding. That's above and beyond the W2s. So they're paid a W2 as an employer. Then these other transactions above and beyond it, which coincidentally matches with the amount that they've stole from our client. OK. And so are you mainly relying on the bank transactions for your evidence or and are you abandoning the arguments that you made in your brief with respect to the post judgment conduct and the inability to collect based on whatever misconduct you're alleging and their failure to appear at the debtors exam, et cetera? Sure. No, I'm not abandoning one of those. I mean, I think that the records, the only records that are impossible to get in this case are the bank records. I mean, fraud is going to be nearly impossible to have direct testimony. The only two individuals are the 50, 50 percent owners of the company, which were Gleason and Bay. And they're the ones that actually did the trans the the transfers. And so the only way we can show fraud is with circumstantial evidence. The only evidence we have in this case is bank account records. We've added those to the court. The court weighed that against these self-serving declarations and taking the job from the jury. He decided on his own he's going to weigh that and give credibility to their declarations instead of the bank records, which were subpoenaed properly from Wells Fargo and Bank of America and show what we believe and what a jury would find is improper transfers of money to cryptocurrency accounts. Is there any other questions on that topic? I would like to one thing we were talking about is that the judge severely focused on that. There's no evidence of fraud, and he cited it twice, as your honor mentioned inside of his order. But he didn't cite any case saying why he needed fraud or how. Well, no, he didn't say it to the order because he cited he's in the transcript and the transcript. Right. Because in the transcript, when when my client won for breach of contract, he signed an actual case and he stated, I'm citing this case in order to rule for breach of contract in your favor. But then he went when he went to the alter ego liability. He had no case law because the case law is unclear in this matter. I mean, if anything, the legal community in Arizona, you know, needs some sort of ruling about twenty nine thirty three or four. You know, I mean, can the LLCs have their bills be pierced? What's the definition of observed formalities? And is it showing a fraud actually required? But I believe it's not actually required. There's unpublished cases in Arizona. There's no published case which sets forth the standard. We believe that the court should have went through the standard and held appropriately that alter ego liability could have been found against the judge. Let's say that, you know, that you identified payments to Gleason's mother as inappropriate, but you do not provide any evidence indicating that she didn't provide any services. That's true that he sent to his mom. Yes, we are at this point in time. I'm sure why he was sending money. Did you propose the mother or direct any discovery towards her to verify anything about that? We did not honor. And that was an issue in the lower court. Also, we the parties were attempting to settle and perhaps go back into business together. And so we asked for a first request extension of time to take all the depositions. And the judge denied it and said that we could not take the depositions that we would see these people at trial. We'll be able to talk to him then. And that's how we can handle it. Want to save some time? Yes. Two and a half minutes. All right. Great. We'll hear then from. Mr. Cozen. Thank you, Your Honor, and thank you, judges. I'm William Cossub. I'm attorney of record for the defendants in the underlying matter, the police in this matter. Zachariah James Gleason and Murrah Mirza Bay. I may call Mr. Gleason and Mr. Bay or Zack or Sonny. I may get I may get a little colloquial. OK. Do you agree that commingling funds between personal accounts and corporate accounts constitutes grounds to pierce the corporate veil? I do not. Under Arizona statutes, I would say the history of the development of the piercing, the corporate veil with the recent 2019 amendment to the statute. I mean, I guess you could show a fact pattern where maybe that's sufficient, but I don't think just the mere commingling, the mere failure to follow proper banking procedures would show commingling. And frankly, I don't believe there's any evidence in this case of commingling. So to be clear, we move for summary judgment. There was a response brief and a reply brief and there was an oral argument. This is a de novo review of that summary judgment with, of course, the court's discretion to to do, you know, to apply. Just why doesn't it show fraud that payments were made to James Dean and Betty White and his mother? Why doesn't that show fraud? Thank you, Your Honor. It's not in the record, so I'm hesitant to say anything that's on the record because of the nature of the review here. But his mother worked for the company and was paid a small amount. And Mr. James Dean worked for the company. He drives a pickup truck and he calls his pickup truck Betty White. So in the office, it was a joke to write him a check to James Dean because he has a name like a famous actor. And his pickup truck, which I don't know why anybody names their pickup truck, but his pickup truck was named Betty White. Had we known this was an issue at any point in the lawsuit, we could have included that in our affidavit. What about the draws that were taken, the large draws that were not reflected on the W-2s? Oh, I actually, Your Honor, I did address that in my brief. First of all, the record is clear and undisputed that both of my clients are both members and managers of the defendant entities, the Utah LLC and the two Arizona LLCs. There's no evidence of fraud when a business is paying money to an owner. My law firm has lots of checks to Bill Cosub and to every other partner in my law firm. Sometimes those checks are compensation. Sometimes those checks are... What evidence is there in the record as to how the level of the payments to be made to them was determined? There's no right. There is no evidence in the record as to the salaries my clients received, the salaries. And this isn't in the record either, but the salary. You didn't put anything in response to the summary judgment motion where they said, here's the pattern which shows that, you know, basically the funds of the LLC are are essentially being drained by the members. You didn't put in any evidence to say that, well, their salary was set to be this and these are just ordinary payments. You just put in a conclusory thing that said we didn't do anything wrong. So, Your Honor, we were the moving party, so we had no idea what issues were going to be raised on the response. And adding affidavits at the reply stage, as this court knows, would be inappropriate in this motion for summary judgment proceeding. However, in our motion for summary judgment, knowing we were defendants in a claim for piercing the corporate veil, two years of litigation having been concluded, discovery having been concluded, no depositions having been taken, the timeline for summary judgment to be filed, we move for summary judgment on all ten causes of action against us. The appellant did not respond to eight of the ten. They included a response to the breach of fiduciary duty argument and on oral argument in the brief. The judge asked, I don't see anything here on your breach of fiduciary duty, and he backed off of that. At oral argument, the only portion of our motion for summary judgment that remained was our claim on piercing the corporate veil. Now, what evidence did we present that has not been contradicted in the record? We presented the evidence that all payments we received were either properly accounted for on W-2s or 1099s in the tax records of the company. There's nothing controverting that. Is that a self-serving statement? It is. The amounts that they have of the payments don't match what's on the W-2. And, Your Honor, that's not a tribal issue. In fact, payments from a company to an owner will never match the W-2. Those payments could be reimbursements. They could be profit. Only salary shows up on a W-2. All we have in the record is there is essentially a large amount of payments being made to the members that essentially drain the corporation of its funds. And there's nothing about to show the regularity of these payments other than conclusory statements. Why couldn't a trier fact look at this? It's not a lot because you don't have any records and none, you know, are available. Why isn't the pattern enough to say that that raises an inference that it would be unjust to allow them, when they were incurring all these obligations for the corporation, to drain all the ability to pay the obligations? Your Honor, that's an excellent question. I'm going to just take a quick sip of water on that. Here is – I want to step back a stage in my response, and then I'll answer your question. It's a motion for summary judgment. Much of what you have just said you have read from the briefs and are conclusory statements unsupported by anything in the record. There's nothing in the record that says this company was drained of funds. There's nothing in the record that says my clients were acting inappropriately. There's nothing in the record that says that. Is there anything in the summary judgment record about how much remained in the corporation? At what – In terms of assets. At what point in time, Your Honor? In the summary judgment record, is there anything that showed, after these payments were made, how much was left in the corporation? No, Your Honor. That's not an issue in the concept of piercing the corporate veil. What we have said in the public record – I'm sorry, Your Honor. I just – I wanted to know the factual question. Is there anything in the record to show what was left in the company after these transfers out were made? No, Your Honor. That was not placed in the record on the motion for summary judgment. So you would agree that there are bank records in the record that show these transactions that occurred. I understand that as you stand here before us today, you're explaining sort of why they may have been appropriate. But you do acknowledge that those records existed, correct? We do, Your Honor. Those are the bank records of the company. Okay. So I want to sort of test your theory that we – you know, when you came up and you said, commingling of funds does not provide grounds to pierce the corporate veil. And yet, there needs to be a logical limit to that statement, I think. Yeah. And in your own brief, you cite to the Uniform Limited Liability Company Act, which in a comment talks about specifically the issue of using corporate funds for personal use and how that can provide grounds to pierce the corporate veil. So I want to understand why, in your view, the bank records that show these transactions where Gleason is withdrawing funds from the company for his own personal use through Venmo, for Cash App, or other personal reasons, and the Zelle payments, not only do they not match the W-2 amount, but this shows, I think, just on the face of the bank records, use of corporate funds for personal use, which goes directly to the cases that are cited in the comment of the Uniform Limited Liability Company Act as grounds for piercing the corporate veil. Thank you, Your Honor. I appreciate the question. I think that gets to the heart of the matter, and I think it gets to the problem with the evidence that what minimal evidence the appellants have attempted to present. You cannot look at a bank record alone to determine if funds were used inappropriately, if funds were commingled, et cetera. How the company spends the money out of the checking account is irrelevant. The issue of commingling or inappropriate use of funds, et cetera, will come when those funds are classified and reported to the government from a tax perspective. Do you agree that commingling of funds and use of corporate dollars for personal use does provide grounds for piercing the corporate veil? Because your answer to the very first question I asked you was that it doesn't. I think, Your Honor, my answer was, generally speaking, it does not. I could imagine a fact pattern where you could present such an egregious set of facts and call that commingling that perhaps that would grant the basis, that would give the basis for piercing the corporate veil. Let me give you a hypothetical LLC that has a million dollars in assets. It then incurs a million dollars in obligations pursuant to a contract to a third party. Yes. And then the members of the corporation vote themselves a salary of a million dollars, drain the funds out of it, and then they can't pay, the corporation can't pay the contract judgment against it. Is that, is the piercing of the corporate veil allowed in the scenario I just described? No, that would be a claim for fraudulent conveyance under federal law where an entity gave away its assets for less than was appropriate. And in that analysis, Your Honor, we would have to look. Why wouldn't that fit? Because it's not just fraud. It's that it would be unjust or inequitable. So why isn't the draining of corporate funds leaving the corporation unable to satisfy the judgment? Why isn't that grounds, together with other factors, for piercing the corporate veil under Arizona law? I appreciate the question. First of all, there's no evidence that this company was looted by the principal. I'm still within the hypothetical because I don't understand the legal rules that you're contending for.  Explain to me in that hypothetical why under Arizona law that wouldn't be grounds for piercing the corporate veil. No. Why? Because that's just a principal being paid legally and consistently through the structure of the company. It's more equitable and unjust than paying yourself inflated salaries so that, you know, you loot the corporation and leave the creditors of the corporation. Your Honor, the concept of an inflated salary would come into the analysis of a fraudulent conveyance by that company of its assets to the principal. Maybe that's another cause of action. The fact that it might fall within something else doesn't mean it doesn't fall within this. The question is, what authority do you have under Arizona law that says whether or not that falls within the grounds of creates inequity or injustice to pierce the corporate veil? Well, I would cite to the statute we cited, ARS Section 29-3304, which in the light of the history of the doctrine of piercing the corporate veil, comes in five years ago and significantly limits the scope for. You argued in your brief that it eliminates the common law doctrine. Yes, I did. Which is, I mean, you know that this comes from, as Judge Desai indicated, it comes from uniform code and the commentary to it makes clear that it doesn't do that. And Arizona has continued to apply it. So that's kind of a borderline. Perhaps I should have said in the facts presented in this case, the piercing the corporate veil because there are no facts in this case to support the theory. And so, but back to your argument, if I recall, which is at what point does an officer's compensation permit the piercing of the corporate veil against the officer? Is that the hypothetical question? At what point does an officer's compensation amount to an injustice against the creditors? At what point does the fact that all of the funds of the corporation go to the members and leave it, then deplete it, create an injustice that would warrant piercing the corporate veil? I don't think it would warrant piercing the corporate veil. It would permit claims to go after those funds in an alternative theory, but it would not warrant piercing the corporate veil. The entity stands. The protection of the members and managers still stands. There are other doctrines that would allow you, after you get your judgment, after you find out that there's no money in the company, there are other legal doctrines that would come into play at that point, which would have statutes of limitations commencing at that point, which would give a creditor a right to try to recover some of those monies that were paid out. But simply saying, as a conclusion of law, as a matter of federal law, that officers can be paid, if an officer is paid too much, that permits the piercing of the corporate veil. It's not federal law. It's Arizona law. Arizona law applies here. It's saying under Arizona law that overcompensate, over, I'm using because that seems to be the connotation in your question, that highly compensated officers are automatically going to have the veil pierced against them if down the road the corporation can't pay its bills or gets a judgment entered against it. That, to me, is a troubling direction for the law. Sir, let me ask you a question because I'm curious to know why we're all sitting here today when the parties entered into a judgment where IGNITE would be paid. I assume that this appeal is still happening because they haven't been able to obtain satisfaction of that settlement between the parties. So what's happening with respect to the post-judgment settlement that was entered into between the parties? Well, the entities are not in this case, Your Honor. And I no longer speak for the entities. I have been removed as their counsel. So I'm not exactly sure to what degree Mr. Dunn is pursuing collection activity on those entities. I know there was a judgment debtor exam conducted against a former member and manager of the company, and there was some confusion as to whether or not he had to participate. None of that is in the record before this court. I don't know what efforts IGNITE is making to collect on the judgment. It's not in the record, but this client was IGNITE's primary distributor in the country. And as he alluded to during his testimony, they were talking about trying to get back in business because without the entity providing those services, the company has really no presence in the U.S. marketplace. But I can't answer the question as to what has been collected or to what degree collection activities are occurring. All right. Thank you, counsel. Thank you, Your Honors. We'll hear rebuttal now. Thank you, Your Honors. Can you answer one of the questions I asked opposing counsel, which is what does the summary judgment record in this case show about the amount of assets that remained in the LLC after the stream of payments that you have pointed to were made? Sure, yes. I'll let you know that the business completely has no money, has $0. Where in the summary judgment record did you put in evidence that shows that? Sure. I believe it's I was just looking at it. It's a page inside of page nine of my response. And the date was the only last time we had actual records. But it's February 28, 2022. Do you have a record site, counsel? Excuse me? Do you have a record site? Yes. ER 029. And at the most recent bank account statement received by Ignite from Bank of America dated February 28, 2022, Higher Connection only had $199,000 in cash left to its name. It's assumed that over the past year and a half, the amount has been wiped out. And as we've tried to collect, we have found out that they have no money at all. We subpoenaed their banks. You said assumed over the past year and a half that the amount was lower, but you didn't have evidence of that. Why not? They had closed their bank accounts. And so I guess I could have put in there that we have gotten bank accounts at a zero. I'm not sure why I put the language assumed at that point in time. I'm not sure if we'd received the documents at that point in time. But as you stated about trying to collect, we have subpoenaed the bank account records again, and they have zero dollars inside both accounts. And so there is no money to. But that's all outside the summary judgment record. We can't we can't consider that for purposes of whether or not summary judgment was properly granted based on the record. At the time, other than to show why they're making these transfers. And that was to lose the company. So it didn't have to be. But in in determining whether you presented enough evidence to raise that inference, we can't look at things that happened after the judgment was entered. I mean, that was just a size inquiry at the beginning of this. Sure. The fact that they have zero dollars at this point in time. Correct. I mean, because that, you know, we're reviewing a summary judgment ruling that was made on a on a closed evidentiary record. And we can't look at things outside that record. Correct. OK. And then unless the court has any questions, I'd like to close by highlighting the practical stakes. Adopting a position would allow every LLC member in Arizona to launder company money through a personal crypto accounts and deplete a company. So it doesn't have to pay its debtors and then invoke three thirty three or four as a shield. Conversely, reversal merely returns the case to a jury to decide credibility. Exactly what precedent instructs the district court should have denied summary judgment, allowed the matter to proceed to a jury for the jury to weigh the evidence and determine which party's evidence to credit. Either the banking records or the appellee's self-serving deficient and admissible unsworn declarations. All right. Thank you, counsel. Thank you. A case just argued will be submitted.
judges: COLLINS, MENDOZA, DESAI